## COURT OF APPEALS, JUNE TERM, 1820.

DAVIS *vs.* SIMPSON, *et al.*

APPEAL from a decree of the Court of Chancery in favour of the complainants in that court. The case is sufficiently stated in the Chancellor's decree, and in the opinion of this court.

KILTY, Chancellor, (February term 1817.) It appears, from the papers in this cause, that a petition was filed for a sale under the will of *S. Simpson*, by *S. Davis*, the present defendant, on which a decree was passed, and the sales thereon ratified, as well as those before made under an erroneous impression; in which last mentioned sales was included the one which is the subject of this suit. These sales were ratified after the usual publication; but although the present complainants, or any other persons interested, might have then objected, I am of opinion that their not objecting, and the consequent ratification, do not prevent an inquiry into the manner of the sale as prayed by the present suit, and do not prevent the court from giving relief; and the facts and circumstances proved as to the fraud and illegality of the sale to *Campbell*, are such as to leave no doubt on my mind that it ought to be set aside, with the acts which followed it. I therefore *decree*, that the sale by *Davis* to *Campbell* be set aside, and that the deed from *Davis* to *Campbell*, and the deed from *Campbell* to *Davis*, be and they are declared to be null and void to all intents and purposes, and that the land and premises mentioned in the said deeds be sold, &c. From this decree the defendant appealed to this court, where the cause was argued before BUCHANAN, EARLE, JOHNSON and DORSEY, J.

*Pinkney* and *Taney*, for the appellant, cited *Phillips'* *Evid.* 110, and *Dorsey vs. Dorsey's heirs*, decided in this court at December term 1813.

*Pigman*, for the appellees, cited *Rob. on Frauds*, 77, 554, 555. 2 *Madd.* 338. *Campbell vs. Walker*, 5 *Ves.* 678. *Lister vs. Lister*, 6 *Ves.* 631. *Exparte Bennett*, 10 *Ves.* 394. *Baldwin vs. Smith and Miller*, in this court, June term 1818; and *Randall vs. Errington*, 10 *Ves.* 426, 7, 8. He also relied on the case of *Dorsey vs. Dorsey's heirs*, in this court, December term 1813.

Davis
vs
Simpson

A trustee cannot purchase at his own sale either in person or by another, and if he does it is in law a fraudulent purchase

If the parties interested in having a purchase by a trustee at his own sale vacated, know the fact of the purchase, and being under no disability to question it, stand by and permit the trustee to use and improve the property as his own, a court of equity will not afterwards grant them relief

If a trustee employs an agent to bid for him at his own sale, and he does bid, and the property is struck off and conveyed to him, and then reconveyed by the agent in pursuance of the previous agreement, in a bill in equity, to set aside both these deeds, it is unnecessary to make the agent or his representative, a party.

EARLE, J. delivered the opinion of the court. The appellant in this cause was appointed executor of the will of *Solomon Simpson*, with authority to sell his real and personal estate, to raise a fund for the payment of legacies bequeathed by the will. He accepted the trust, and actually sold the whole estate, to the amount of $15,228 12, more than $7000 of which was purchased by *Æneas Campbell*. Among other things he purchased the dwelling estate of the trustee at the price of ten dollars and ten cents per acre, and the purchase amounted to $4541 23¾. The possession of the property, real and personal, purchased by *Campbell*, never passed from *Davis*, the trustee; and within less than five days after the sale, for the precise consideration of $4541 23¾, the dwelling estate was conveyed to him, and on the same day he reconveyed it to *Davis*. The object of the bill is to vacate these deeds, and sell the estate for the benefit of the legatees, upon the ground, that the sale and conveyance to and from *Campbell* was fraudulent, he being the agent of *Davis*, the trustee, and having bid in the estate for him.

That a trustee cannot purchase at his own sale in person, or by another, and when it is done, that the act is deemed fraudulent, is law too well understood at this day to be controverted.

The law being out of the question, the merits of this case turn upon the simple fact, whether *Campbell* acted at the sale as the friend and agent of *Davis*, the trustee, or purchased in the estate, in controversy, for his own use.

In support of either side of this question, sundry depositions were taken, and are to be found in the record. They have been accurately examined by the court, and we have been brought irresistibly to the conclusion, that the dwelling estate of *Solomon Simpson* was not purchased by *Campbell* for his own use, but was bid in by him for the trustee, his neighbour and friend, *Solomon Davis*. *John Benson* proves a conversation between him and *Davis*, at the time the land was under the hammer, that leaves no room for doubt; and however suspicious his character may be, his testimony is corroborated by many circumstances, and by the evidence of several other witnesses, altogether unexceptionable.

Placing this case on a legal fraud then, which we think fully established, we will inquire, whether an unreasonable

acquiescence in the complainants has deprived them of the

equity they would be otherwise entitled to? It is an undeviating chancery principle, that the man who asks equity must be free from exception, and ready to do equity to others. Have these complainants, knowing all the suspicious circumstances attendant on the sale, drawn upon the trust fund for part payment of their legacies? Have they laid by to decoy *Davis*, the defendant, into expensive improvements of the estate they are endeavouring to take from him? Have they postponed the proceeding in chancery until *Campbell* was out of the way? If they have done all these iniquitous things, they are unworthy of the countenance of a court of equity. But are those dishonest deeds proved on them, or is there a semblance of such proof in the record? The court have been unable to find it. No evidence is adduced by the defendant in support of the receipts he has filed, and in his account with the orphans court, he has not obtained credit for the alleged payments made to the legatees. It no where appears that the estate has been greatly appreciated in the hands of the defendant, by industrious cultivation and costly improvements. And the suit was not commenced in chancery immediately after the death of *Campbell*, as though the legatees had been waiting for that unfortunate event. The complainants have neither alleged nor proved, it is true, the reason of their delay; but it seems the two champions of the legatees, *James Simpson* and *George Borwick*, have been at law with the defendant for their portions of the personal estate of the testator, and this may be their excuse for not proceeding at an earlier period in equity. Be this as it may, the court perceive in the case nothing to charge them with unjust views.

The court cannot entertain a doubt on the question of proper parties, and approving of the chancellor's decree, do affirm it.

DECREE AFFIRMED